UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-53-GWU

KIMBERLY ROSE HOLMAN,                                                 PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

**INTRODUCTION**

Kimberly Holman brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

09-53 Kimberly Rose Holman

>  Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

09-53  Kimberly Rose Holman

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

09-53 Kimberly Rose Holman

a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Holman, a 39-year-old former textile inspector, suffered from impairments related to chronic obstructive pulmonary disease, sleep apnea, obesity, low back pain, depression, and anxiety. (Tr. 15, 20). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 18, 20). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 20-21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included an exertional limitation to medium level work restricted from a full range by such non-exertional limitations as (1) an inability to ever climb ladders, ropes or scaffolds; (2) a need to avoid concentrated exposure to unprotected heights, work place hazards and pulmonary irritants such as dust, fumes and gases;

and (3) a restriction to jobs requiring only simple instructions in positions accommodating a decreased ability to maintain attention and concentration for extended periods. (Tr. 68). In response, Bradford identified a significant number of jobs which could still be performed. (Tr. 69). The ALJ then asked about an exertional limitation to light level work restricted from a full range by (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb stairs or ramps; (3) a need to avoid exposure to temperature extremes or excess humidity; and (4) an inability to perform work requiring more than casual interaction with others and which was not highly stressful. (Id.). The witness again identified a significant number of jobs which could still be performed. (Tr. 70). Therefore, assuming that the vocational factors considered by Bradford fairly depicted Holman's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

      The ALJ dealt properly with the evidence of record regarding Holman's physical condition. Dr. James Ross (Tr. 129-136) and Dr. John Rawlings (Tr. 211-220) each examined the record and opined that the plaintiff would be restricted to medium level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds and a need to avoid concentrated exposure to dust, fumes, odors, poor ventilation and hazards such as machinery and heights. These factors were presented to the vocational expert who identified a significant number of jobs

09-53 Kimberly Rose Holman

which would still be available.  The only restriction on the claimant's activity recommended by Dr. Rachel Eubanks, a treating source, was a need to quit smoking.[1]  (Tr. 172).  More severe physical restrictions than those presented to the vocational expert were not identified by the other treating and examining sources such as Dr. Jose Echeverria of the Appalachian Regional Medical Center (Tr. 246-303), and Dr. Mousab Almusaddy (Tr. 303A-317).  These reports provide substantial evidence to support the administrative decision.

The ALJ also dealt properly with the evidence of record pertaining to Holman's mental status.  Psychologists Stephen Scher (Tr. 137-138) and Larry Freudenberger (Tr. 235-236) each reviewed the record and opined that the plaintiff would be "moderately" limited in her ability to maintain attention and concentration for extended time periods.  This factor was considered by the vocational expert.  Dr. Syed Raza treated the plaintiff for her mental problems and also performed a consultative examination and did not impose more severe mental limitations than found by the ALJ.  (Tr. 156-167, 240-245).  In September of 2006, Dr. Raza diagnosed dysthymia and a mood disorder.  (Tr. 243).  The examiner rated the claimant's Global Assessment of Functioning (GAF) at 58.  (Tr. 244).  Such a GAF suggests the existence of "moderate" mental restrictions according to the American

---

[1] The plaintiff, while reducing her cigarette smoking, did not completely quit.  (Tr. 380).

09-53  Kimberly Rose Holman

Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34, and would be compatible with the ALJ's findings.  In September of 2007, Dr. Raza rated Holman's GAF at 75, suggesting the existence of only "slight" psychological impairment.  (Tr. 165).  Therefore, the substantial evidence also supports this portion of the administrative decision.

      Holman asserts that the ALJ erred in evaluating her problem with chronic obstructive pulmonary disease.  Among the plaintiff's complaints is that the ALJ did not address the December, 2006 pulmonary function study from Dr. Fatana Saljooql.  However, the ALJ did note that the test revealed only a "very mild" breathing abnormality.  (Tr. 19, 210).  Contrary to the claimant's assertion that the diagnosis of chronic obstructive pulmonary disease, made by such physicians as Dr. Raza and Dr. Echeverria, was completely disregarded, the ALJ actually found this to be a "severe" impairment.  (Tr. 15).  The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988).  As previously noted, no physician of record identified the existence of more severe physical restrictions than those presented to the vocational expert and certainly no physician indicated the need for more severe physical limitations due to her problems with chronic obstructive pulmonary disease.  The ALJ noted that despite her failure to completely stop smoking, the record indicated that inhalant therapies had been effective in alleviating her

09-53 Kimberly Rose Holman

pulmonary symptoms. (Tr. 19, 246-303). The plaintiff rather than the ALJ had the burden of proving that this condition was totally disabling. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 N. 5 (1987). This burden was not carried in this action.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of November, 2009.

**Signed By:**

<u>G. Wix Unthank</u>

**United States Senior Judge**